```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      CENTRAL DIVISION at LEXINGTON
```

WILLIAM MOORE,                   )
                                 )
    Plaintiff,                   )   Action No. 5:11-cv-150-JMH
                                 )
v.                               )
                                 )
CHARTER FOODS, INC.              )   **MEMORANDUM OPINION AND ORDER**
    et al.,                      )
                                 )
    Defendants.                  )
                                 )
                                 )
                                 )

                    **   **   **   **   **

This matter is before the Court upon Defendant Tacala, LLC's ("Tacala") motion for summary judgment. [DE 46]. Plaintiff has filed a response, [DE 50], stating that he does not oppose Tacala's motion. Defendant Charter Foods, Inc. ("Charter Foods" or "Charter") has filed a response in opposition of Tacala's motion, [DE 51], and Tacala has filed a reply, [DE 52]. The Court, having reviewed the record and being otherwise adequately advised, finds this motion ripe for ruling. For the following reasons, Tacala's motion, [DE 46], will be granted.

**I.   BACKGROUND**

This matter arises from Plaintiff's alleged exposure to *Salmonella* Hartford and resulting illness. In his Complaint, Plaintiff averred that, on or about May 28, 2010, he contracted

a strain of *Salmonella* after purchasing and consuming food from Taco Bell restaurants in Berea, Kentucky (Defendant Charter Foods, Inc.) and London, Kentucky (Defendant Tacala, LLC). According to his Complaint, Plaintiff fell ill on or about May 31, 2010, suffering severe gastrointestinal symptoms, and was later diagnosed with *Salmonella* Hartford. In discovery responses given on May 26, 2011, Plaintiff maintained that he had eaten at both the Berea and London Taco Bells on May 28, 2010. In support of his claims, he produced a credit card statement indicating that his card was used to purchase food from the Berea Taco Bell on May 28, 2010. Additionally, he produced a drive-through receipt from the London Taco Bell, dated May 28, 2010. In his deposition, taken on November 1, 2011, Plaintiff testified that his friend Judy Duerson found the receipt, either in her home or in his, and gave it to him after he fell ill because she thought the receipt might be important.

Throughout Plaintiff's deposition, he expressed serious doubts as to whether he actually ate at the London, Kentucky Taco Bell during the relevant time period. The only evidence supporting this allegation is Plaintiff's deposition testimony and the receipt produced by Plaintiff's friend. In its motion for summary judgment, Tacala contends that Plaintiff has failed to raise a genuine issue as to whether he consumed food from its

2

London, Kentucky Taco Bell restaurant and, therefore, his claims against Tacala fail as a matter of law.

## II. STANDARD OF REVIEW

The standard for summary judgment mirrors the standard for directed verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). A grant of summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show[] that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *See Niemi v. NHK Spring Co., Ltd.,* 543 F.3d 294, 298 (6th Cir. 2008). A genuine dispute exists on a material fact, and thus summary judgment is improper, if the

3

evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

The judge's function is not to weigh the evidence, but to decide whether there are genuine issues for trial. *Id.; Multimedia 2000, Inc. v. Attard,* 374 F.3d 377, 380 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson,* 477 U.S. at 255; *Summers v. Leis,* 368 F.3d 881, 885 (6th Cir. 2004).

### III. DISCUSSION

Plaintiff asserts claims against Tacala based upon theories of strict liability, negligence, and breach of warranties. To prevail on any of these claims, Kentucky law requires Plaintiff to prove that Tacala caused his damages. *See Huffman v. SS. Mary and Elizabeth Hosp.,* 475 S.W.2d 631, 633 (Ky. 1972)("We do not feel it is necessary to discuss the appellant's claims of negligence, breach of implied warranty and strict liability because all of these theories of liability have one common denominator, which is that causation must be established."). We agree with Tacala that, based on the evidence of record, a reasonable jury could not find that Tacala caused Plaintiff's injuries.

4

### A. Plaintiff's Deposition Testimony

Plaintiff's deposition testimony weighs strongly in favor of granting summary summary judgment for Tacala. Plaintiff made several unsolicited statements concerning the events surrounding his illness, which were focused on the Berea Taco Bell. When asked if he recalled eating at both the Berea and London Taco Bells prior to getting sick, Plaintiff responded, "I remember eating there, but I don't know if I – I don't think I ate there twice on that day. . . . I wouldn't have eaten the same place twice." He went on to state, "I don't recall if I ate there twice. I did eat there once." When questioned about naming two different Taco Bell restaurants in his lawsuit, Plaintiff responded, "I'm naming this one here in Berea." Later, when asked whether he recalled eating at Taco Bell in London in late May 2010, Plaintiff stated, "I do not." Plaintiff's testimony demonstrates his own confusion as to whether he ate at the London Taco Bell during the relevant time period. When asked whether it was possible that he ate at both Taco Bell locations on May 28, 2010, he stated, "No. I remember Berea, but I don't remember London." In an attempt to explain the inconsistencies in his allegations, Plaintiff suggested that his previous statements regarding the London Taco Bell were merely general – that he could have eaten at the London Taco Bell, but that he did not remember the specific dates or times. He went on to

state, "I'm saying I remember Taco Bell in Berea that day but don't know if I went to London or not that day." The receipt from the London Taco Bell, which has been filed in the record, reflects a drive-through purchase. When questioned about this, Plaintiff testified that he had never gone through the drive-through at the London Taco Bell – that he avoids drive-throughs entirely, to prevent "spilling food all over the car."

Based on Plaintiff's deposition testimony, no reasonable juror could conclude, by a preponderance of the evidence, that Plaintiff consumed food from the London, Kentucky Taco Bell on or about May 28, 2010. *See Leary v. Livingston Cnty.,* 528 F.3d 438, 444 (6th Cir. 2008)("When a claimant's testimony contradicts the allegations in his complaint, we will credit his later testimony."). The conclusion that Plaintiff consumed food from the London Taco Bell during the time period in question simply cannot be drawn from Plaintiff's inconsistent statements. Plaintiff, while not entirely sure, obviously doubts this notion himself. If anything, Plaintiff's statements confirm that he did not purchase food at the London Taco Bell drive-through. Viewing the testimony in a light most favorable to Charter Foods, the most that can be said is that Plaintiff does not know whether he ate at the London Taco Bell. Plaintiff's belief that, perhaps, he may have eaten there is simply an insufficient

6

basis for a jury to find that Tacala caused Plaintiff's injuries.

B.  The London, Kentucky Taco Bell Receipt

During discovery, Plaintiff produced a drive-through receipt from the London Taco Bell, dated May 28, 2010. For several reasons, the existence of this receipt does not help to establish a material issue of fact. In his deposition, Plaintiff testified that his friend Judy Duerson discovered the receipt but he was uncertain as to where she found it. Concerning the origin of the receipt, Plaintiff testified: "It was on my dresser. In fact, I didn't even find it. Judy found the receipt. . . ." When questioned more specifically about the location of the receipt, Plaintiff testified, "If [Duerson found the receipt on *Plaintiff's* dresser], it was at my house in Morehead. If she didn't, she found it on her dresser. And I don't know which one." Based on these responses, it is clear that Plaintiff does not have first-hand knowledge of where the receipt was found. In opposing Tacala's motion for summary judgment, Charter Foods is required to bring forth whatever evidence it has to demonstrate that Plaintiff's claims against Tacala should be submitted to a jury. *See Celotex,* 477 U.S. at 326 (party opposing summary judgment must come forward with all of its supporting evidence). Charter Foods makes no attempt, however, aside from relying on Plaintiff's Complaint and

7

deposition testimony, to demonstrate the authenticity of the receipt.  Disregarding any hearsay issue that may exist, there is no indication that the receipt can be authenticated as evidence of a purchase made by Plaintiff.  Neither Plaintiff nor anyone else purports to have personal knowledge of the alleged transaction upon which the receipt is based.  Because the receipt cannot be authenticated and there is no suggestion that an individual with first-hand knowledge will testify as to the underlying transaction, the receipt will not be considered for purposes of ruling on Tacala's motion for summary judgment.  *See Bailey v. Floyd Cnty. Bd. of Educ.,* 106 F.3d 135, 145 (6th Cir. 1997)(citing *Celotex,* 477 U.S. at 324)("The proffered evidence need not be in admissible *form*, but its *content* must be admissible.")(emphasis in original).

    C.    **Dr. Hull's Report**

Finally, Charter Foods suggests that summary judgment should not be granted in Tacala's favor because there is a genuine dispute as to whether Plaintiff became infected with *Salmonella* through person-to-person contact, as the result of Tacala's conduct.  Charter speculates, through its expert Dr. Hull, that because the Taco Bell receipt might have been located in Judy Duerson's home, Ms. Duerson might have consumed tainted food, become infected, and subsequently passed *Salmonella* to Plaintiff.  There is simply no evidence to support this theory,

8

particularly when one considers Ms. Duerson's alleged disdain for Taco Bell's offerings, of which Plaintiff testified emphatically.  Further, there is no indication in the record that Ms. Duerson ever contracted *Salmonella* or experienced any symptoms of infection.  To allow Plaintiff's claims against Tacala to proceed based upon such conjecture is a leap the Court is unwilling to make. *See Audi AG v. D'Amato,* 469 F.3d 534, 545 (6th Cir. 2006)(Court will not "draw strained and unreasonable inferences in favor of the nonmovant.")

## IV. CONCLUSION

For the foregoing reasons, there is no genuine issue that any damages Plaintiff may have sustained were caused by Defendant Tacala, LLC.  Accordingly, Tacala's motion for summary judgment, [DE 46], is **GRANTED.**

This the 17th day of April, 2012.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge